# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DEBRA M. LEVERANCE,

   Plaintiff,

 v.               Case No. 09-C-559

MICHAEL J. ASTRUE,

   Defendant.

## DECISION AND ORDER

  In a previous action, Plaintiff appealed the Commissioner of Social Security's determination that she is not entitled to disability benefits. In that case, which was decided by Magistrate Judge Callahan, Plaintiff obtained a remand because Judge Callahan concluded that the Administrative Law Judge ("ALJ") had not adequately addressed the opinion of Plaintiff's treating physician. Judge Callahan also questioned the ALJ's credibility determination. Following remand, a newly-assigned ALJ again determined that Plaintiff was not entitled to benefits. The present action is an appeal of that decision. For the reasons given below, I conclude that the ALJ's opinion is not supported by substantial evidence, and I direct the Commissioner to respond as to the appropriate course to take under the circumstances.

  Many of the facts and relevant medical history are set forth in Magistrate Judge Callahan's opinion in Plaintiff's previous action. (No. 07-C-413, Dkt. # 24.) To summarize, Plaintiff suffered from a number of medical conditions including disc bulges and depression. This led to chronic pain that appeared largely uncontrolled by medication, in part because Plaintiff could not tolerate some

medication; the pain also contributed to Plaintiff's depression. After Plaintiff's benefits claim was denied by the Commissioner, Judge Callahan remanded the appeal on the grounds that the ALJ had not properly considered the opinion of Plaintiff's treating physician, Dr. Julie Wilson, and that the ALJ's credibility determination was not fully developed. On remand, a new ALJ conducted a video hearing and issued an opinion largely echoing the opinion of the first ALJ. Plaintiff, who appears *pro se*, argues that the ALJ made similar mistakes and that those errors justify a finding that she is eligible for disability benefits.

The proper weight given to the opinion of the claimant's treating physician is a common issue in Social Security appeals, and here it proves dispositive. On a state medical examination and capacity form, Dr. Julie Wilson wrote that Plaintiff's prognosis was "poor." (Tr. 255.) Plaintiff had the ability to stand and walk for only 1-2 hours per day, and an ability to sit for the same period of time. (*Id.*) In addition, she was limited to working 4 hours per day, and this restriction was "permanent." (Tr. 256.) If fully credited, Dr. Wilson's opinion would mean Plaintiff was disabled under the Social Security Act.[1] The original ALJ, however, discounted Dr. Wilson's opinion significantly. First, he took issue with the fact that Plaintiff had not seen Dr. Wilson in two years. The ALJ also concluded that the lack of any current medication and Plaintiff's failure to seek recent treatment suggested that Dr. Wilson's opinion overstated Plaintiff's symptoms. Finally, the ALJ found that Plaintiff's daily activities, including driving herself to the hearing and sitting in the waiting room, contradicted her claim of disability and Dr. Wilson's opinion.

---

[1] SSR 96-8p defines residual functional capacity as "the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Judge Callahan remanded because he concluded the ALJ had "played doctor" by substituting his opinion for that of the treating physician, Dr. Wilson. (No. 07-C-413, Dkt. # 24 at 11.) Judge Callahan's decision offers a thorough analysis of the "treating source rule" and the steps an ALJ must take in considering the opinion of a treating source. In a nutshell, "[i]f a treating source's medical opinion on an issue of the nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record, the adjudicator must give it controlling weight." SSR 96-8p. And even if the ALJ does not give the physician's opinion controlling weight, the ALJ must give it the appropriate weight under all of the circumstances and explain why he is doing so. Judge Callahan found the ALJ's explanation for discounting the treating source opinion to be insufficient. It was true that Plaintiff had not seen Dr. Wilson in some two years, but that was due to an insurance issue the ALJ did not note. (See Tr. 249, noting that "because she could not see Dr. Wilson after she lost her insurance she has not been on Hydrocodone for several months.") In addition, the record is full of Plaintiff's visits to medical providers such as physical therapists, and there was significant evidence in the record that medication was not helping. (On one occasion she even received an epidural shot but suffered meningitis as a complication. This complication caused her doctor to avoid prescribing future epidurals.) Finally, Judge Callahan found that the ALJ had essentially cherry-picked facts, such as the fact that Plaintiff drove herself to the hearing, while ignoring other facts, such as the fact that she had to stop and stretch on her way there. Moreover, none of the facts cited by the ALJ contradicted Dr. Wilson's opinion.

3

On remand, the new ALJ also concluded that Dr. Wilson's opinion was entitled to little weight:

> The claimant's medical records show that treating physicians responded with limited and conservative treatment. Such treatment is inconsistent with the medical response that would be expected if limitations were as severe as described by Dr. Wilson. The conclusions of this medical source appear to be based primarily on the subjective statements of the claimant. The underlying documentation from the treating source provided in the record fails to support the limitations indicated by Dr. Wilson (Exhibit 12F). The medical opinion of neurosurgeon Dr. Lyons regarding the claimant's condition is given significant weight, based upon supportability with medical signs and laboratory findings; consistency with the record; and area of specialization (Exhibit 13F).

(Tr. 417.)

Unfortunately, I must conclude that the ALJ's explanation for discounting Dr. Wilson's opinion again comes up short. First, although it is true that physicians employed "conservative" treatment, that does not necessarily mean the claimant's disability and pain were minimal. Conservative treatment might also be prescribed for a patient riddled with a fatal disease, yet that certainly does not mean the patient is not disabled. In *Oakes v. Astrue,* for example, the patient's physician "recommended against further surgery and suggested conservative treatment," but nevertheless concluded that his patient was unable to work due to her back condition. 258 Fed. Appx. 38, 40, 2007 WL 4455436, *1 (7th Cir. 2007). Although the ALJ rejected the treating physician's opinion, the Seventh Circuit reversed and concluded that the ALJ (and district court) had not given adequate deference to the treating source opinion or explained adequately why it should be discounted. Here, one of the opinions relied upon by the ALJ, that of Dr. Lyons, states that Plaintiff was not a surgical candidate. (Tr. 261.) As such, conservative treatment was called

4

for. But the simple fact that surgery would not help Plaintiff does not mean her symptoms were not disabling, and to conclude otherwise (without more) is to "play doctor".[2]

The ALJ also concluded that Dr. Wilson's opinion was based on Plaintiff's subjective statements and found that the limitations Dr. Wilson imposed were unsupported by the medical evidence in the record. The ALJ did not provide any more than this conclusory explanation, however. That is, the ALJ did not explain why the medical evidence in the record failed to support Dr. Wilson's limitations, nor did she explain why she believed Dr. Wilson's opinion was based only on Plaintiff's subjective statements. The evidence is replete with physical therapy and other medical records, including evidence that Plaintiff has L4-5 disk bulging, hip problems, numerous prescription medications, and underwent multiple pelvic surgeries. As Judge Callahan noted, there were some 20 separate visits to medical practitioners from 2004 to 2006. Dr. Joyce Bauer, another treating physician, believed Plaintiff should see a neurosurgeon for her back, and prescribed numerous pain medications (including the epidural noted above, which caused complications). (Tr. 248.) Her physical therapist noted that Plaintiff has pain getting up and down from a chair and was "standing when I came into the room." (Tr. 249.) She was "very tender to the touch even with light touch along her lumbar spine . . ." (*Id.*) Finally, a nurse practitioner noted that Plaintiff "has difficulty even sitting when she talks to me." (Tr. 252.) Based on this and other evidence in the

---

[2]In some cases conservative treatment could be more telling. For example, if a patient claims horrible pain but is told to use only aspirin, it could be a sign that the medical provider lacks evidence to prescribe anything stronger. Or if conservative treatment were coupled with an optimistic medical prognosis, it could show that the claimant was improving. *See, e.g., Bailey v. Barnhart,* 39 Fed. Appx. 430, 436, 2002 WL 1401225, *7 (7th Cir. 2002) ("doctors had on numerous occasions reported that Ms. Bailey was benefitting from conservative treatment and that Ms. Bailey's complaints about pain and ineffective treatment intensified only after she had filed for disability benefits.")

record, it is difficult to see how the ALJ could conclude that the evidence "fails to support" Dr. Wilson's opinion. It is further impossible to discern why the ALJ believed Dr. Wilson's opinion was based largely on Plaintiff's subjective statements. This was not a case of fibromyalgia or some other kind of physical infirmity unconnected to any demonstrable physical cause. An MRI showed problems in Plaintiff's spine, bulging and disk dessication (e.g., Tr. 186, 190, 197), and the numerous treatments Plaintiff received (epidural injection, physical therapy, prescription painkillers) were not the product of a purely subjective vocalization of pain. In fact, nowhere in the record is there any suggestion by any of Plaintiff's numerous health care providers that Plaintiff was exaggerating her symptoms or that her stated symptoms were not consistent with the physical evidence.

The ALJ appears to have relied on the opinion of Dr. Lyons, a neurosurgeon, as being contradictory to Dr. Wilson. But Dr. Lyons does not express anything more than a hope that Leverance *could* get better with conservative treatment. The "medical opinion" cited by the ALJ is simply a cover letter to another physician in which Dr. Lyons states that "I feel confident that we will be able to get her over her symptom complex with vigorous conservative measures." (Tr. 261.) Without more, it is difficult to see how a single sentence of optimism from a cover letter written by one physician at the outset of treatment would be entitled to more weight than the explicit opinion of Plaintiff's treating physician after the "conservative measures" have been tried.

Nor has the Commissioner adequately explained why Plaintiff's credibility should be discounted significantly. First, although the ALJ did not mention it, there is evidence in the record that Plaintiff was not malingering or simply creating a record to bolster her benefits claim. Her nurse practitioner, for example, noted that Plaintiff was applying for Social Security so she could

6

get some help to get therapy and then "go back to work." (Tr. 252.) Dr. Bauer noted that "Patient was cheerful here in the office. She is hoping she can get her back fixed so that she can return to gainful employment. Currently she cannot and I would certainly think it would be appropriate to do a repeat neurosurgical consultation . . ." (Tr. 248.)

Second, the ALJ's effort to discount the Plaintiff's credibility is unsatisfactory. The ALJ found that Plaintiff's activities "including performing household chores" were inconsistent with an inability to perform any work. (Tr. 417.) But the ALJ never explained how a claimant's ability to do minimal chores would undermine the assertion that she cannot work a full-time job due to her pain. Unless the individual is completely disabled or bedridden, every disability claimant will report doing some housework and the typical kinds of things one must do to get by. Thus, as Magistrate Judge Callahan noted in his earlier opinion, the mere fact that Plaintiff reported performing household chores does not undercut her claim of disability. (No. 07-C-413, Dkt. # 24 at 12.) (citing *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000) ("minimal daily activities . . . do not establish that a person is capable of engaging in substantial physical activity."))

In addition, the Commissioner's defense of the ALJ's credibility findings reflects a misunderstanding of the import that should properly be given to a claimant's daily activities. For example, the Commissioner argues that "if she were as disabled as she claimed, she would not be able to perform the daily activities that she has reported." (Dkt. # 14 at 10.) These activities include: living by herself, caring for pets, talking on the phone, using the computer and "read[ing] magazines and at least one book a month." (*Id.*) It is unclear how these extremely modest daily undertakings (reading a magazine?) would undermine the Plaintiff's assertion that she cannot work a full-time job. In fact, her limited activities are exactly the sorts of pursuits one would expect

7

someone who *is* disabled to engage in. In other words, the fact that her activities were so minimal *supports* rather than undermines the conclusion that Plaintiff is disabled. To say that a claimant is able to read and use a computer is merely to say that she is not a complete vegetable. But Plaintiff never claimed she was, and neither did Dr. Wilson. The question is whether she would be able to work a full-time job, and none of the activities cited by the ALJ speak to that question at all. *Cf. Greiner v. Commissioner of Social Sec. Admin.,* 318 Fed.Appx. 564, 566, 2009 WL 613040, *1 (9th Cir. 2009) (finding that claimant's "daily activities, such as repairing a car, lifting hay bales, and caring for horses, demonstrate that he is more capable than he claims.").

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms." (Tr. 417.) Once this finding was made, it was incumbent upon the ALJ to explain why her testimony and statements were not credible. SSR 96-7p. For the reasons set forth above, I conclude that the ALJ's explanation is insufficient.

Based on the above, as well as the previous decision of Judge Callahan, it seems clear that the Commissioner is unable to legitimately discount the opinion of Plaintiff's treating physician or explain why Plaintiff is less than credible. Federal courts "have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In a case like this, particularly when the Commissioner has had two tries already, it would likely not be fruitful to remand the case for further development, because nothing in the record would undermine the opinion of Dr. Wilson which, if credited, would mean Plaintiff is entitled to benefits. *See, e.g., Holohan v. Massanari,* 246 F.3d 1195, 1210 (9th Cir. 2001) ("We have repeatedly held that a remand for further proceedings is unnecessary if the record is fully developed and it is clear from

8

the record that the ALJ would be required to award benefits.") (citing *Pitzer v. Sullivan,* 908 F.2d 502, 506 (9th Cir. 1990) (awarding benefits rather than remanding after ALJ improperly considered treating physician opinion)).

The question of remanding-versus-awarding benefits has not been briefed by either side, however. Accordingly, I will direct the Commissioner to address this issue in a short brief within fourteen days of the date of this order. In particular, the government should explain whether any additional issues need to be explored on remand or whether, in accordance with the above, I may simply direct the Commissioner to award benefits based on the record before me.

**SO ORDERED** this   25th   day of August, 2010.


                                           s/ William C. Griesbach
                                           William C. Griesbach
                                           United States District Judge